**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━━━━

LAWRENCE K.,

                                        Plaintiff,

         v.

COMMISSIONER OF SOCIAL SECURITY,                No. 5:23-CV-00496
                                                (DNH/CFH)

                                        Defendant.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**APPEARANCES:**                        **OF COUNSEL:**

Olinsky Law Group                       HOWARD D. OLINSKY, ESQ.
250 South Clinton Street – Suite 210
Syracuse, New York 13202
Attorney for plaintiff

Social Security Administration          JASON P. PECK, ESQ.
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

     Lawrence K.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("the

Commissioner") denying his application for a period of disability and disability insurance

---

[1] This matter was referred to the undersigned for completion of a Report and Recommendation in accordance with General Order 18 and Local Rule 72.3(d).  See Dkt. No. 5.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

benefits.  <u>See</u> Dkt. No. 1.  Plaintiff moves for the Commissioner's decision to be vacated and remanded for further proceedings.  <u>See</u> Dkt. No. 11.  The Commissioner moves for the Commissioner's decision to be affirmed.  <u>See</u> Dkt. No. 18.  Plaintiff filed a reply. <u>See</u> Dkt. No. 19.  For the following reasons, it is recommended that plaintiff's motion be denied, and the Commissioner's decision be affirmed.

## I. Background

On September 22, 2020, plaintiff filed a Title II application for a period of disability and disability benefits.  <u>See</u> T. at 79, 246.[3]  Plaintiff alleged a disability onset date of September 29, 2019.  <u>See id.</u> at 79, 98-100, 246.  The Social Security Administration ("SSA") denied plaintiff's claims initially on January 22, 2021, and upon reconsideration on April 30, 2021.  <u>See id.</u> at 121-24, 134-44.  Plaintiff appealed and requested a hearing, <u>see id.</u> at 146-47, and a virtual hearing was held before Administrative Law Judge ("ALJ") Kenneth Theurer on December 6, 2021.  <u>See id.</u> at 38-77.  On January 5, 2022, the ALJ issued an unfavorable decision.  <u>See id.</u> at 17-28.  Plaintiff timely commenced this action on April 21, 2023.  <u>See</u> Dkt. No. 1.

## II. Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  <u>See</u> 42 U.S.C. §§ 405(g),

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. <u>See</u> Dkt. No. 6.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page.

1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.

1990).  Rather, the Commissioner's determination will only be reversed if the correct

legal standards were not applied, or it was not supported by substantial evidence.  See

Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d

464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning

that in the record one can find "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d

Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal

citations omitted)).  The substantial evidence standard is "a very deferential standard of

review . . . [This] means once an ALJ finds facts, we can reject [them] only if a

reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin.,

Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal

quotations marks omitted).  Where there is reasonable doubt as to whether the

Commissioner applied the proper legal standards, the decision should not be affirmed

even though the ultimate conclusion is arguably supported by substantial evidence.

See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817

F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding

is supported by substantial evidence, such finding must be sustained "even where

substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v.

Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

**B. Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the

> [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. See id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff "me[t] the insured status requirements of the Social Security Act through December 31, 2024[,]" and "ha[d] not engaged in substantial gainful activity since September 29, 2019, the alleged onset date[.]" T. at 19. At step two, the ALJ found that plaintiff "ha[d] the following severe impairments: posttraumatic stress disorder (PTSD), anxiety disorder, depressive disorder, attention deficit hyperactivity disorder (ADHD), obesity, degenerative disc disease of the cervical spine, and scoliosis (20 CFR

404.1520(c)).”  Id.  At step three, the ALJ determined that plaintiff did not have an

impairment or combination of impairments that met or medically equaled the severity of

one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id. at

20-21.  Before reaching step four, the ALJ concluded that plaintiff retained the residual

functional capacity (“RFC”) to

> perform less than the full range of light work as defined in 20
> CFR 404.1567(b).  Specifically, he can occasionally lift and
> carry twenty pounds, frequently lift and carry ten pounds, sit
> for up to six hours, and stand or walk for approximately six
> hours in an eight hour day with normal breaks.  He can
> occasionally climb ramps or stairs; can never climb ladders,
> ropes or scaffolds; and can perform occasional balancing,
> stooping, kneeling, crouching, and crawling.  [Plaintiff] can
> perform no more than occasional overhead reaching
> bilaterally.  He retains the ability to understand and follow
> simple instructions and directions, perform simple tasks with
> supervision and independently, maintain attention/
> concentration for simple tasks, regularly attend to a routine
> and maintain a schedule, and relate to and interact with
> coworkers and supervisors to the extent necessary to carry
> out simple tasks—i.e. he can ask for help when needed,
> handle conflicts with others, state his own point of view,
> initiate or sustain a conversation, and understand and
> respond to physical, verbal, and emotional social cues, but
> he should avoid work requiring more complex interaction or
> joint efforts with coworkers to achieve work goals.  He
> should have no more than occasional contact with coworkers
> and supervisors and should have no more than incidental
> contact with the public.  He can handle reasonable levels of
> simple work-related stress in that he can make simple
> decisions directly related to the completion of his tasks in a
> stable, unchanging work environment.  I define incidental as
> more than never and less than occasional, simply the job
> should not involve direct interaction with the public, but he
> does not need to be isolated away from the public.

Id. at 21-22.  At step four, the ALJ determined that plaintiff was “unable to perform his

past relevant work (20 CFR 404.1565).”  Id. at 26.  At step five, the ALJ concluded that

“[c]onsidering [plaintiff’s] age, education, work experience, and residual functional

capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1569 and 404.1569a)."  Id. at 27.  Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act, from September 29, 2019, through the date of this decision[.]"  Id. at 28.

## IV. Discussion

### A. The Parties' Arguments[4]

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. See Dkt. No. 11 at 17.  Specifically, plaintiff acknowledges that "[i]n formulating his RFC, the ALJ evaluated the opinion of the consultative examiner, Jeanne Shapiro, Ph.D., and found her opinion was 'less persuasive.'"  Id. at 13 (citing T. at 25). However, plaintiff contends that "[t]he ALJ's evaluation of Dr. Shapiro's opinion failed to comply with controlling law and is unsupported by substantial evidence."  Id. at 11. Plaintiff explains that "Dr. Shapiro's opinion was favorable to [p]laintiff as she opined marked and extreme limitations in his abilities to sustain concentration and pace; regulate emotions, control behavior, and maintain well-being; and interacting with others."  Id. at 13.  Plaintiff asserts that "[i]nstead of adequately addressing supportability or consistency, the ALJ diminished Dr. Shapiro's opinions because they were inconsistent with 'other evidence of record' and [p]laintiff's activities of daily living," and "[t]hese types of conclusory statements do not satisfy the regulations' articulation requirements."  Id. at 13-14; see Dkt. No. 19 at 1-2.

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF, located in the header of each page.

Plaintiff argues that, regarding the ALJ's reliance on plaintiff's daily activities, "the ALJ offers no explanation of how these activities contradict with [p]laintiff's inability to sustain concentration and pace, regulate emotions, control behavior, and maintain well-being," and the ALJ failed to "build a logical bridge showing how [these] activities translate to the ability to perform basic work functions[.]" Dkt. No. 11 at 14-15. Plaintiff further alleges that "the ALJ fail[ed] to discuss at all that the [Veterans Affairs (V.A.)] disability finding is consistent with Dr. Shapiro's limitations." Id. at 16.

The Commissioner argues that "[t]he ALJ complied with 20 C.F.R. § 404.1520c when determining the persuasiveness of Dr. Shapiro's January 14, 2021 medical-opinion and the ALJ's finding that it was 'less persuasive' is supported by substantial evidence." Dkt. No. 18 at 2, 6. Specifically, the Commissioner contends that the ALJ properly considered the "supportability" and "consistency" of Dr. Shapiro's opinion. Id. at 7. The Commissioner asserts that "it was reasonable, correct, and sufficient for the ALJ not only to consider, but also rely upon, [plaintiff's] ability to hunt, cook, drive, and spend time with friends and family when determining [that] Dr. Shapiro's work-related limitations . . . were less persuasive." Id. at 13. The Commissioner further argues, "[c]ontrary to [plaintiff's] argument, . . . the ALJ was not required to discuss the VA's 100% disability rating[.]" Id. at 12.

**B. Analysis**

On January 14, 2021, plaintiff underwent a psychiatric consultative evaluation with Jeanne Shapiro, Ph.D. See T. at 779-83. Following the evaluation, Dr. Shapiro issued a report including a summary of plaintiff's background information; current functioning; psychiatric, medical, drug and alcohol, legal, family, and military histories;

mental status; appearance; speech; thought processes; affect; mood; sensorium; orientation; attention and concentration; memory skills; cognitive functioning; insight; judgment; consistency; and mode of living.  See id. at 779-82.  Dr. Shapiro diagnosed plaintiff with posttraumatic stress disorder with panic attacks, unspecified depressive disorder, generalized anxiety disorder, and attention deficit hyperactivity disorder, inattentive type.  See id. at 782.  Dr. Shapiro opined that plaintiff

> does not appear to have any limitations understanding, remembering, and applying simple or complex directions and instructions, or using reason and judgment to make work-related decisions.  He has marked to extreme limitations interacting adequately with supervisors, coworkers, and the public.  Mild to marked limitations sustaining concentration and performing a task at a consistent pace depending upon his level of anxiety.  Moderate limitations sustaining an ordinary routine and regular attendance at work.  Marked to extreme limitations regulating emotions, controlling behavior, and maintaining well-being.  No limitations maintaining personal hygiene or being aware of normal hazards and taking appropriate precautions.  Difficulties are caused by psychiatric problems . . . and this may significantly interfere with [plaintiff's] ability to function on a daily basis.

Id.  Dr. Shapiro recommended that plaintiff "engage in individual psychological therapy and psychiatric intervention" and estimated that the "expected duration of [plaintiff's] impairment and time frame for suggested therapy" would be "[m]ore than two years."  Id. at 783.

The ALJ found that "Dr. Shapiro's opinion was less persuasive, as it was not entirely supported by her examination findings, such as the claimant being cooperative and exhibiting adequate social skills, an adequate manner of relating, and grossly intact attention and concentration."  T. at 25.  The ALJ further explained that "Dr. Shapiro's opinion was also inconsistent with other evidence of record, including the clinical

findings by the claimant's treatment providers and the claimant's activities such as hunting, cooking, driving, and spending time with friends and family."  Id.

Plaintiff challenges the ALJ's evaluation of Dr. Shapiro's opinion, arguing that the ALJ did not "adequately address[ ] supportability or consistency" of the opinion.  Dkt. No. 11 at 13.  The Commissioner asserts that "the ALJ considered the 'supportability' and 'consistency' of Dr. Shapiro's medical-opinion as required by [the regulations]." Dkt. No. 18 at 7.

An ALJ "must consider all medical opinions and 'evaluate the[ir] persuasiveness' based on their supportability and consistency, the author's relationship with the claimant and specialization, and 'other factors.'"  Cassandra G. v. Comm'r of Soc. Sec., 626 F. Supp. 3d 553, 564 (N.D.N.Y. 2022) (quoting 20 C.F.R. § 416.920c(a)-(c)); see also 20 C.F.R. § 404.1520c(a)-(c).  "Although the ALJ is not required to assign a specific 'weight' to a medical opinion, the ALJ must still 'articulate how [he or she] considered the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions.'"  Id. (quoting § 416.920c(a) and (b)(1)); see also 20 C.F.R. § 404.1520c(a), (b)(1).  The ALJ must expressly "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  "[S]upportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  Id. §§ 404.1520c(c)(1), 416.920c(c)(1).  "[C]onsistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from

other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  Id. §§ 404.1520c(c)(2), 416.920c(c)(2).  "A conclusory analysis of the [relevant] factors 'precludes the Court from undertaking meaningful review' of the ALJ's decision[;] [i]ndeed, '[c]ourts in this Circuit have remanded when the ALJ failed to address either supportability or consistency.'"  Annjeanette B. v. Kijakazi, No. 3:22-CV-198 (ATB), 2023 WL 3040663, at *8 (N.D.N.Y. Apr. 21, 2023) (citations omitted).

    "Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his [or her] RFC determination while ignoring other evidence to the contrary."  Jackson v. Kijakazi, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) (citing Velasquez v. Kijakazi, No. 19-CV-9303 (DF), 2021 WL 4392986, at *27 (S.D.N.Y. Sept. 24, 2021) (collecting cases)).  "However, it is not the Court's function to reweigh the evidence that was before the ALJ."  Mary M. v. Comm'r of Soc. Sec., No. 8:20-CV-1594 (TWD), 2022 WL 823850, at *11 (N.D.N.Y. Mar. 17, 2022) (citing Vincent v. Shalala, 830 F. Supp. 126, 133 (N.D.N.Y. 1993)).  Nevertheless, "the ALJ is required to explain his reasoning to a sufficient degree such that the Court can, at the very least, glean his rationale in making the RFC determination."  Malia Ann B. v. Comm'r of Soc. Sec., No. 5:21-CV-1362 (AMN/CFH), 2023 WL 2838054, at *5 (N.D.N.Y. Feb. 23, 2023) (citing Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's decision[.]")), report and recommendation adopted, 2023 WL 2623865 (N.D.N.Y. Mar. 24, 2023).

"District courts in the Second Circuit have reiterated . . . that an ALJ errs where he or she summarily concludes that an opinion is unsupported by treatment notes or inconsistent with the record." Loni S. v. Comm'r of Soc. Sec., No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *15 (N.D.N.Y. June 27, 2023) (citing Stephanie F. v. Kijakazi, No. 8:20-CV-1528 (BKS), 2022 WL 3355964, at *10 (N.D.N.Y. Aug. 15, 2022) ("[T]he ALJ's conclusory statement that [the provider's] conclusions 'are not consistent with the overall medical evidence' is not an adequate articulation of the consistency factor."), and Ayala v. Kijakazi, 620 F. Supp. 3d 6, 31 (S.D.N.Y. 2022) ("The ALJ's assessment of the supportability of [the] opinions is highly conclusory. The ALJ offered only that '[one] opinion is supported by record review' and that '[the other] opinion is supported by examination.' Such conclusory statements offer no insight into 'how well [either doctor] supported and explained their opinion,' and are insufficient to withstand review.")) (additional citation omitted).

Here, the ALJ found Dr. Shapiro's opinion to be "less persuasive." T. at 25. As for the supportability factor, the ALJ found that Dr. Shapiro's opinion "was not entirely supported by her examination findings, such as the claimant being cooperative and exhibiting adequate social skills, an adequate manner of relating, and grossly intact attention and concentration." Id.; see Loni S., 2023 WL 4195887, at *14 ("The supportability factor requires an ALJ to ask whether a medical source provided supporting explanations for his or her opinion."); see also Kami B. v. Saul, No. 5:18-CV-1497 (DJS), 2020 WL 247279, at *6-7 (N.D.N.Y. Jan. 16, 2020) (finding that the ALJ adequately assessed supportability where the ALJ noted that "Dr. Allam's opinion was not entirely supported by [the p]laintiff's treatment notes and clinical findings"); Janice H.

v. O'Malley, No. 3:22-CV-630 (HEH), 2024 WL 1376216, at *3, 5 (E.D. Va. Mar. 29, 2024) (concluding that, where the ALJ determined that a medical opinion was "only somewhat persuasive," the ALJ properly addressed supportability by noting that the medical opinion was "not entirely supported by . . . clinical findings").  Specifically, although Dr. Shapiro opined that plaintiff had marked and extreme limitations in his abilities to sustain concentration and pace, regulate emotions, control behavior, and maintain well-being, and interact with others, the ALJ noted that Dr. Shapiro also found that plaintiff "did not have any limitations understanding, remembering, and applying simple or complex directions and instructions[,]" "[w]as pleasant/cooperative[,]" and he "exhibited adequate social skills" and "grossly intact attention and concentration."  T. at 20-21 (citing T. at 779-83).  The ALJ accordingly concluded that Dr. Shapiro's opined marked and extreme limitations were "not entirely supported by her examination findings[.]"  Id. at 25.

Thus, contrary to plaintiff's contentions, the ALJ's articulation is sufficient to demonstrate that he considered the supportability of Dr. Shapiro's opinion.  See Tara M. B. v. Comm'r of Soc. Sec., No. 1:22-CV-1058 (MAD/DEP), 2023 WL 7286669, at *4 (N.D.N.Y. Sept. 21, 2023) (determining that the ALJ's review of supportability was sufficient where the ALJ stated that the doctor's opinion was only "somewhat supported by [his] examination report," as the degree of some limitations recommended were not supported by the doctor's own objective findings), report and recommendation adopted sub nom. Tara B. v. Comm'r of Soc. Sec., 2023 WL 7281138 (N.D.N.Y. Nov. 3, 2023); cf. Glenn G. v. Kijakazi, No. 3:22-CV-824 (RMS), 2023 WL 2477501, at *13 (D. Conn. Mar. 13, 2023) ("Nowhere does the ALJ mention the supportability factor, and . . . the

Court cannot adequately glean how the ALJ weighed the supportability factor.") (internal quotation marks and citations omitted).

As for the consistency factor, the ALJ found that Dr. Shapiro's opinion "was also inconsistent with other evidence of record, including the clinical findings by [plaintiff's] treatment providers and [plaintiff's] activities such as hunting, cooking, driving, and spending time with friends and family."  T. at 25; see Rua-Campusano v. Kijakazi, No. 20-CV-7087 (GBD/SLC), 2021 WL 7287628, at *10 (S.D.N.Y. Dec. 10, 2021) ("Consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."), report and recommendation adopted, 2022 WL 493390 (S.D.N.Y. Feb. 17, 2022).  Although the ALJ did not cite to other specific medical evidence in this paragraph, "[t]he ALJ's detailed summary of plaintiff's treatment history, provided in an earlier section of the written decision, highlights the evidence upon which the ALJ rendered this consistency assessment." Julie M. v. Comm'r of Soc. Sec., No. 8:23-CV-518 (MJK), 2024 WL 664413, at *11 (N.D.N.Y. Feb. 16, 2024) (citing Disotell v. Comm'r of Soc. Sec., No. 7:16-CV-0480 (WBC), 2017 WL 3491851, at *7 (N.D.N.Y. Aug. 14, 2017) (concluding that the ALJ provided "ample rationale" to support her determination that a medical opinion was inconsistent with medical evidence in the record where, "elsewhere in her decision[,] the ALJ outlined specific [treatment notes] and other objective medical evidence" which was inconsistent with the restrictive limitations opined), and Mongeur, 722 F.2d at 1040 (noting that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered")); see Kami B, 2020 WL 247279, at *6-7

(finding that the ALJ adequately discussed supportability and consistency because, although the plaintiff "is correct that the ALJ did not, in his discussion of Dr. Allam's opinion, explain in detail why he found those opinions not to be consistent with or supported by the evidence in the record[,] . . . the ALJ explained the findings in the record earlier in his decision").

Specifically, ALJ Theurer previously summarized the treatment providers' clinical findings.  See T. at 23.  For example, he noted that, "[o]n October 8, 2019, [plaintiff] was pleasant and cooperative and had good eye contact, normal grooming and hygiene, normal speech, normal psychomotor activity, an ok mood, a broad and appropriate affect, logical and goal-directed thought processes, good insight and judgment, and intact cognition."  T. at 23 (citing T. at 450-51).  "On October 16, 2019, [plaintiff] exhibited a constricted affect, reported an anxious mood, and had fair judgment and insight."  Id. (citing T. at 447).  "In November 2019, [plaintiff] stated he was doing good, was described as pleasant/cooperative, and had good eye contact, normal grooming and hygiene, normal speech, normal psychomotor activity, an ok mood, a broad and appropriate range affect, logical and goal-directed thought processes, good insight and judgment, and grossly intact cognition."  Id. (citing T. at 438-39).  "In February 2020, [plaintiff] stated that he tapered himself off of the medications and exhibited good eye contact, normal grooming and hygiene, normal speech, normal psychomotor activity, an ok mood, a broad and appropriate range affect, logical and goal-directed thought processes, good insight and judgment, and intact cognition."  Id. (citing T. at 398-99). "In May 2020, [plaintiff] was pleasant/cooperative and exhibited normal speech, an ok mood, a broad and appropriate range affect, logical and goal-directed thought

processes, good insight and judgment, and intact cognition."  Id. (citing T. at 390-91).

"In September 2020, the claimant denied having severe depression and relayed that he

took himself off all psychiatric medications months ago with no repercussions."  Id.

(citing T. at 378).

The ALJ also previously summarized plaintiff's activities of daily living.  See T. at

24.  "In October 2019, [plaintiff] reported trying to keep himself busy, still spending time

with friends, and hunting 'every chance [he] g[o]t.'"  Id. (citing T. at 442).  "In November

2019, . . . [plaintiff] reported that he continued to spend time with his friends and family."

Id. (citing T. at 438).  "In February 2020, [plaintiff] relayed that he was 'working part time

with his friend.'"  Id. (citing T. at 398).  "On November 16, 2020, [plaintiff] relayed that he

had dropped off a friend in Florida."  Id. (citing T. at 370).  "In November 2020, [plaintiff]

also reported taking care of his dog, cooking, mowing the lawn, driving, shopping in

stores and by computer, being able to pay bills, watching TV, hunting, watching his kids

play sports, being able to follow written instructions, and going to church and the gym."

Id. (citing T. at 287-94).  "He also reported taking the garbage out and taking his kids to

appointments and practices."  Id. (citing T. at 296).  "[I]n January 2021, . . . [plaintiff]

reported helping watch his children every day and enjoying watching TV, hunting, and

coaching."  Id. (citing T. at 785-89).  In April 2021, plaintiff "also reported volunteering

with his church and having social interactions with the limited number of people he is

comfortable with."  Id. (citing T. at 808).  "At the December 2021 hearing, [plaintiff]

reported driving and hunting."  Id.

Plaintiff challenges the ALJ's reliance on his daily activities.  See Dkt. No. 11 at

13-15.  The undersigned notes that "[t]he ALJ was permitted to consider plaintiff's

activities of daily living when evaluating the opinion evidence of record."  Jamie C. v. Kijakazi, No. 3:21-CV-105 (ATB), 2022 WL 4356182, at *8 (N.D.N.Y. Sept. 20, 2022); see 20 C.F.R. § 404.1529(c)(3)(i) ("An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole."); see also David S. v. Comm'r of Soc. Sec., No. 1:21-CV-203 (DB), 2023 WL 8891451, at *9 (W.D.N.Y. Dec. 26, 2023) (explaining that it was proper for the ALJ to consider the plaintiff's daily activities in assessing the consistency of a medical opinion); Medina v. Comm'r of Soc. Sec., 831 F. App'x 35, 36 (2d Cir. 2020) (summary order). "However, [the ALJ] was still required to explain how the performance of such activities undermined [the medical provider's] opinion and instead demonstrated that plaintiff was capable of performing substantial gainful work in a competitive work environment." Jamie C., 2022 WL 4356182, at *8; see Serena T. v. Comm'r of Soc. Sec., 561 F. Supp. 3d 370, 378-79 (W.D.N.Y. 2021) ("The ALJ's citation to [the p]laintiff's ability to care for her children, drive a car, or exercise—without additional evidence as to how these activities contradict Dr. Gift's opinions relating to [the p]laintiff's physical functioning in a work-related setting—is not sufficient."); see also Kassandra P. v. Acting Comm'r of Soc. Sec., No. 3:23-CV-05443 (TLF), 2024 WL 1928356, at *4 (W.D. Wash. May 2, 2024) ("However, again, the ALJ did not explain how these activities contradict the moderate limitations opined by Dr. Griffin and Dr. Mitchell. . . . Therefore, this was not a proper reason to discount Dr. Griffin and Dr. Mitchell's opinions.").

As plaintiff argues, in considering daily activities, "the ALJ must build a logical bridge showing how those daily activities translate to the ability to perform basic work functions on a five-day, eight-hour basis."  Dkt. No. 11 at 15 (citing Meadors v. Colvin,

No. 5:13-CV-0160 (LEK), 2015 WL 224759, at *11 (N.D.N.Y. Jan. 15, 2015)); see Miller v. Colvin, 122 F. Supp. 3d 23, 29 (W.D.N.Y. 2015) (finding the ALJ erred by failing to explain how the plaintiff's limited activities of daily living translated into the ability to perform substantial gainful work in a typical competitive workplace environment) (citations omitted); see also Nancy C. v. Comm'r of Soc. Sec., No. 6:23-CV-00088 (TJM/MJK), 2024 WL 1468871, at *7 (N.D.N.Y. Jan. 25, 2024) ("[T]o the extent the ALJ relied on plaintiff's daily and regular activities to discount [a medical] opinion, this analysis 'is particularly problematic given that courts have consistently warned against placing the level of emphasis on daily activities that the ALJ appears to have done here'. . . [and i]f an ALJ is going to rely on such activities, he must explain how their performance undermined the more restrictive [medical] opinions.") (quoting Pamela P. v. Saul, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *6 (N.D.N.Y. May 20, 2020)), report and recommendation adopted sub nom. Nancy E. C. v. Comm'r of Soc. Sec., 2024 WL 939223 (N.D.N.Y. Mar. 5, 2024).  The ALJ did not do so here, which constitutes error.  See T. at 17-28.

However, any such error was harmless because, even if the ALJ had properly explained how plaintiff's activities of daily living translate to an ability to perform sustained work activity, it would not have reasonably affected the ALJ's consistency determination or the ALJ's ultimate conclusion that Dr. Shapiro's opinion was "less persuasive."  T. at 25; see, e.g., Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (explaining that an error is harmless where the is no "reasonable likelihood" that such error would change the ultimate determination); Mary M. v. Comm'r of Soc. Sec., No. 1:22-CV-00939 (CJS), 2024 WL 1045211, at *5 (W.D.N.Y. Mar. 11, 2024) ("[A]n ALJ's

error in failing to provide such an explanation may be deemed harmless where it did not affect the outcome of his decision."); Glenn G., 2023 WL 2477501, at *14 ("While the ALJ has committed various legal errors in assessing [the medical] opinions, these errors may be excused if they are harmless, i.e., they would not have reasonably affected the plaintiff's RFC or the outcome of the disability determination.") (citations omitted).

The undersigned notes that the ALJ did not rely solely on plaintiff's daily activities in concluding that Dr. Shapiro's opinion was inconsistent. See T. at 25; see also Jaime B. v. Kijakazi, No. 19-CV-02431 (JLB), 2022 WL 3718839, at *8 (S.D. Cal. Aug. 29, 2022) ("For these reasons, the Court finds that the ALJ did not identify a specific, clear, and convincing reason for discrediting [evidence] when he failed to explain how the identified daily activities either contradicted [the evidence] or equaled transferable work skills. However, the Court finds that this is harmless error because, as addressed above, the ALJ provided other, adequately supported, bases for discrediting [the evidence]."), aff'd sub nom. Barton v. O'Malley, No. 22-56002, 2024 WL 937230 (9th Cir. Mar. 5, 2024). The ALJ also relied on "the clinical findings by [plaintiff's] treatment providers" to determine that Dr. Shapiro's opinion was inconsistent and, thus, less persuasive. T. at 23, 25; see Scott A. C. v. Comm'r of Soc. Sec., No. 5:20-CV-1530 (BKS/DEP), 2022 WL 3141707, at *6 (N.D.N.Y. May 3, 2022) ("Based on a review of the record as a whole, I recommend a finding that the ALJ's failure to articulate how he assessed the factor of supportability is harmless error in this case because nothing in Dr. Londin's examination report would result in a different conclusion, or, even if her findings could raise questions regarding supportability, it is clear from the ALJ's assessment of all of the other evidence that the ALJ nonetheless would have concluded

her opinion was still not persuasive"), report and recommendation adopted sub nom. Scott A. C. v. Kijakazi, 2022 WL 2965585 (N.D.N.Y. July 27, 2022); see also Lanier v. Kijakazi, No. 4:20-CV-1414, 2022 WL 969771, at *6-7 (M.D. Pa. Mar. 30, 2022) (explaining that, where "the ALJ mischaracterized [the plaintiff's] activities of daily living, which the ALJ cites to [discount evidence]," such error was harmless "because the ALJ provided other reasons for [discounting the evidence]").  As detailed above, the ALJ noted that plaintiff's treatment providers found him to have "logical and goal-directed thought processes," "good insight and judgment," "grossly intact cognition," and observed that he was also "pleasant/cooperative."  T. at 23.  As Dr. Shapiro's medical opinion remains inconsistent with these clinical findings, there is "no reasonable likelihood" that the ALJ's more thorough articulation of plaintiff's daily activities would have changed his consistency determination.  Riaz v. Comm'r of Soc. Sec., No. 20-CIV-8418 (JPC/SLC), 2022 WL 4482297, at *6 (S.D.N.Y. Sept. 27, 2022) (quoting Young v. Kijakazi, No. 20-CV-3604 (SDA), 2021 WL 4148733, at *11 (S.D.N.Y. Sept. 13, 2021)).

To the extent plaintiff contends that the ALJ improperly "ignore[d]" "the V.A. disability finding," such argument fails.  Dkt. No. 11 at 15-16.  The ALJ specifically cited to the V.A. disability rating when stating that he would not be "providing articulation about evidence that is inherently neither valuable nor persuasive, in accordance with [the regulations,] . . . includ[ing] statements that [plaintiff] is 'disabled' . . . or has a certain percentage of disability."  T. at 26 (citing T. at 777); see Nathan B. v. Comm'r of Soc. Sec., No. C23-5820 (BAT), 2024 WL 1193108, at *2 (W.D. Wash. Mar. 20, 2024) (rejecting the plaintiff's argument that the ALJ erred by failing to provide an analysis of the V.A. disability rating, explaining that "the ALJ correctly stated that the [V.A.]'s

disability rating is not binding on the Social Security Agency and that analysis of that decision is not required under Social Security regulations").  As the Commissioner argues, "the regulations make clear that a decision from another governmental agency, such as the V.A., about an individual being disabled under that agency's rules is not only not binding on the Commissioner of Social Security, but the ALJ was not required to discuss the V.A.'s 100% disability rating," pursuant to 20 C.F.R. § 404.1504.  Dkt. No. 18 at 12; see Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) ("A determination made by another agency regarding a claimant's disability is not binding on the Social Security Administration."); see also Kitchen v. Kijakazi, 82 F.4th 732, 739 (9th Cir. 2023) ("Put simply, the 2017 regulations removed any requirement for an ALJ to discuss another agency's rating.  Thus, it was not error for the ALJ to exclude [the plaintiff's V.A.] disability rating from her analysis.").

Moreover, the ALJ need not "discuss every piece of evidence submitted," and a "failure to cite specific evidence does not indicate that such evidence was not considered."  Porteus v. O'Malley, No. 23-969, 2024 WL 2180203, at *3 (2d Cir. May 15, 2024) (summary order); see Brault, 683 F.3d at 448 ("An ALJ does not have to state on the record every reason justifying a decision. . . . An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.") (internal quotation marks and citations omitted).  Thus, it was not erroneous for the ALJ to decline to address the V.A. disability report in discussing the consistency of Dr. Shapiro's opinion. See Kimberly S. v. Kijakazi, No. 3:23-CV-21 (VDO), 2024 WL 718249, at *4 (D. Conn. Feb. 22, 2024) ("Because [the p]laintiff's eligibility for [State-Administered General Assistance] involves a decision by another governmental agency, the ALJ was not

required to explicitly analyze how that evidence was considered"); <u>see also</u> <u>Daniel F. v.</u> <u>Comm'r of Soc. Sec.</u>, No. 1:22-CV-00292 (EAW), 2023 WL 6304722, at *5 (W.D.N.Y. Sept. 28, 2023) ("In other words, the ALJ's failure to specifically discuss every detail of [medical evidence] does not demonstrate that it was ignored, as [the p]laintiff suggests, and does not serve as a basis for remand."); <u>C.D. v. Kijakazi</u>, No. 22-CV-05574 (VKD), 2024 WL 40210, at *7 (N.D. Cal. Jan. 3, 2024) ("Under the new regulations, it was not error for the ALJ to exclude [the plaintiff's V.A.] disability rating from her analysis.").

Thus, the ALJ adequately addressed the consistency of Dr. Shapiro's opinion. <u>See</u> T. at 25; <u>see also</u> <u>Difiglia v. Comm'r of Soc. Sec. Admin.</u>, No. 22-CV-6825 (KAM), 2024 WL 1332502, at *14-15 (E.D.N.Y. Mar. 28, 2024) (concluding that the ALJ properly found medical opinions to be "less persuasive" where the opined "marked" limitations on the plaintiff's mental functioning were inconsistent with other record evidence reporting that the plaintiff was "psychiatrically stable with [a] generally healthy mental status"); <u>see also</u> <u>Sandra M. v. Comm'r of Soc. Sec.</u>, No. 3:22-CV-00485 (TWD), 2023 WL 4972707, at *12 (N.D.N.Y. Aug. 3, 2023) (explaining that the ALJ sufficiently addressed consistency by finding "Dr. Khan's medical opinion to be inconsistent with the assessments of other physicians who rendered an opinion on [the p]laintiff's abilities and limitations.").

In sum, the ALJ "properly evaluated the supportability and consistency of [Dr. Shapiro's] opinion with respect to" plaintiff's limitations. <u>Tawredou v. Kijakazi</u>, No. 20-CV-10253 (JLC), 2022 WL 3037264, at *11 (S.D.N.Y. Aug. 2, 2022). Therefore, the ALJ did not err in his assessment of Dr. Shapiro's opinion, which was "less persuasive" because it was "not entirely supported by her examination findings" and "inconsistent

with other evidence of record."  T. at 25; see Ashley E. v. Comm'r of Soc. Sec., No.

6:22-CV-299 (GTS/CFH), 2023 WL 6217792, at *19 (N.D.N.Y. Aug. 21, 2023) ("The

undersigned also finds no legal error in the ALJ's discussion of the medical opinions[,

as] ALJ Romeo reviewed the medical opinions in the record and discussed their

consistency or inconsistency with each other, whether they were supported by any

substantive explanations, and their consistency with the medical evidence."), report and

recommendation adopted, 2023 WL 6215829 (N.D.N.Y. Sept. 25, 2023); see also

Tamara N. W. v. Comm'r of Soc. Sec., No. 1:20-CV-1696 (WBC), 2022 WL 7087230, at

*4 (W.D.N.Y. Oct. 12, 2022) ("Although brief, the ALJ's explanation and written decision

allow the Court to trace the path of his reasoning for not adopting the doctor's finding.")

(internal quotation marks and citations omitted); cf. Jaleesa H. v. Comm'r of Soc. Sec.,

No. 1:20-CV-01180 (EAW), 2022 WL 174337, at *5 (W.D.N.Y. Jan. 18, 2022)

(remanding where "the ALJ did not explain anything—instead, he made a conclusory

statement that [an] opinion was 'generally consistent and supportive,' without any

explanation of how he assessed the opinion in connection with the consistency and

supportability factors which, as explained above, is required by the new regulations.").

"Because he explicitly considered both the consistency and supportability of Dr.

[Shapiro's] opinion, the ALJ did not fail to properly evaluate the opinion as required by

the . . . regulations in making his findings."  Tawredou, 2022 WL 3037264, at *11.  Thus,

in formulating the RFC, the ALJ properly rejected some of the limitations that Dr.

Shapiro assessed.[5]  See Sara W. v. Comm'r of Soc. Sec., No. CV 23-869 (RMB), 2024

---

[5] To the extent plaintiff contends that substantial evidence does not exist for the ALJ's RFC determination, he ignores the ALJ's express consideration of (1) plaintiff's treatment notes, where plaintiff consistently demonstrated he had "logical and goal-directed thought processes," "good insight and judgment," and "intact cognition"; and (2) the opinion of the state agency medical consultants, who found plaintiff had the

WL 658047, at *7 (D.N.J. Feb. 16, 2024) (concluding that, although the plaintiff argued that the ALJ improperly rejected limitations in a medical opinion, the ALJ sufficiently addressed the supportability and consistency of that opinion; thus, remand was not warranted); see also Tawredou, 2022 WL 3037264, at *11.  Accordingly, it is recommended that plaintiff's motion be denied, and the Commissioner's decision be affirmed.

## V. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that the plaintiff's motion (Dkt. No. 11) be **DENIED**; and it is further

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**; and it is

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision & Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS**

---

capacity "to understand, remember, and carry out detailed work procedures with an adequate level of persistence and pace" and "may have some problems with intense and prolonged social interactions but was capable of relating to others in routine work interactions."  T. at 23, 25-26; see also Tawredou, 2022 WL 3037264, at *11 n.7.  "Ultimately, it is the claimant's burden to demonstrate the limitations in the RFC," and plaintiff has not done so here.  Gutierrez v. Comm'r of Soc. Sec., No. 20-CV-10233 (KHP), 2022 WL 2116718, at *9 (S.D.N.Y. June 13, 2022) (citing Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order)); see also Whitmore v. Kijakazi, No. 20-CV-08435 (SN), 2022 WL 976964, at *11 (S.D.N.Y. Mar. 31, 2022) ("Although [the plaintiff] contends that the entirety of the record supports a finding that he was incapable of performing sedentary work, he fails to cite to any specific evidence that supports his contention.  This fact alone could constitute substantial evidence supporting a denial of benefits.") (citation omitted).

**REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Date:   July 10, 2024
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge